UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SUHAD AFARI,

                          Plaintiff,

                                                              Case # 16-CV-595-FPG
v.

                                                              DECISION AND ORDER

NANCY A. BERRYHILL,[1] ACTING COMMISSIONER
OF SOCIAL SECURITY,

                          Defendant.


        Suhad Afari ("Afari" or "Plaintiff") brings this action pursuant to the Social Security Act

("the Act") seeking review of the final decision of the Acting Commissioner of Social Security

("the Commissioner") that denied her application for Supplemental Security Income ("SSI")

under Title XVI of the Act.  ECF No. 1.  The Court has jurisdiction over this action under 42

U.S.C. §§ 405(g), 1383(c)(3).

        Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c).  ECF Nos. 8, 14.  For the reasons that follow, Plaintiff's motion is GRANTED,

the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner

for further administrative proceedings.

                                    **BACKGROUND**

        On January 7, 2013, Afari protectively applied for SSI with the Social Security

Administration ("the SSA").  Tr.[2] 168-75.  She alleged that she had been disabled since April 1,

2011 due to left arm nerve damage and depression.  Tr. 184.  On March 11, 2015, Afari and a

vocational expert ("VE") appeared and testified at a hearing via videoconference before

---

[1]        Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for
Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2]        References to "Tr." are to the administrative record in this matter.

Administrative Law Judge James G. Myles ("the ALJ"). Tr. 37-53. Afari testified with the assistance of an Arabic interpreter. *Id.* On April 17, 2015, the ALJ issued a decision finding that Afari was not disabled within the meaning of the Act. Tr. 13-25. On May 24, 2016, the Appeals Council denied Afari's request for review. Tr. 1-4. Thereafter, Afari commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II.    Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

The ALJ's decision analyzed Afari's claim for benefits under the process described above.  At step one, the ALJ found that Afari had not engaged in substantial gainful activity since the application date.  Tr. 15.  At step two, the ALJ found that Afari has the following severe impairments: left upper extremity nerve damage, residual neurological damage, obesity, depression, and posttraumatic stress disorder.  Tr. 15-16.  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 16-18.

Next, the ALJ determined that Afari retained the RFC to perform light work[3] with additional limitations.  Tr. 18-23.  Specifically, the ALJ found that Afari can lift and carry up to 10 pounds with her left upper extremity; can occasionally use left hand controls, and reach, handle, and finger with her left upper extremity; cannot climb ladders, ropes, and scaffolds, or have concentrated exposure to hazards; and is limited to unskilled work with only occasional interpersonal contact, no teamwork, and only superficial public contact.  Tr. 18.

At step four, the ALJ indicated that Afari had no past relevant work.  Tr. 23.  The ALJ also indicated that Afari is unable to communicate in English.  Tr. 24 (citing 20 C.F.R. § 416.964).  At step five, the ALJ relied on the VE's testimony and found that Afari can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience.  Tr. 24-25.  Specifically, the VE testified that Afari could work

---

[3]     "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 416.967(b).

as a sorter (light work), inserter, and sorter (sedentary work).  Tr. 24.  Accordingly, the ALJ concluded that Afari was not "disabled" under the Act.  Tr. 25.

## II.    Analysis

Afari argues that remand is required because the ALJ erred at step five when he failed to resolve a conflict between the jobs the VE identified that she could perform and the definition of those jobs in the Department of Labor's Dictionary of Occupational Titles ("DOT").[4]  ECF No. 8-1, at 12-13; ECF No. 15, at 1-3.  Specifically, Afari argues that a conflict exists because she cannot communicate in English, yet each job that the VE identified at step five requires the ability to carry out instructions and speak in English.  *Id.*  The Commissioner maintains that the ALJ did not err because the RFC determination restricted her to unskilled work, which typically does not require the ability to communicate in English, and imposed other communication-related limitations.  ECF No. 14-1, at 25-26.  For the reasons that follow, the Court finds that the ALJ erred at step five and that this matter must be remanded for further administrative proceedings.

At Afari's hearing, the ALJ asked the VE to assume an individual with Afari's age, education, and work experience who was limited to light unskilled work with additional limitations.  Tr. 49-51.  After the VE identified three jobs that this type of individual could perform, the following exchange occurred:

> ALJ:   . . . and an inability to communicate in English isn't part of the job to have to communicate, read, or write in English?
>
> VE:   No, *read or write* English would not be a requirement for those.

---

[4]    Afari advances other arguments that she believes warrant reversal of the Commissioner's decision.  ECF No. 8-1, at 13-17; ECF No. 15, at 4.  However, because the Court disposes of this matter based on the ALJ's step five error, those arguments need not be reached.

> ALJ:    Okay, does your testimony contain any discrepancies or disparities or things that aren't covered in the Dictionary of Occupational Titles?
>
> VE:    No, sir.

Tr. 51 (emphasis added).  Afari argues that this exchange only resolved whether she would be required to read and write at these jobs and did not explain whether she would be required to communicate in English.  The Court agrees.  As Afari correctly points out, literacy and communication are separate issues.  The SSA's regulations define "illiteracy" as the "inability to read or write," while the "inability to communicate in English" is a separate educational factor that the SSA may consider.  20 C.F.R. §§ 416.964(b)(1), (b)(5).

The jobs listed in the DOT contain General Educational Development ("GED") codes that "embrace[] those aspects of education (formal and informal) which are required of the worker for satisfactory job performance."  *See* DOT App'x C – Components of the Definition Trailer, General Educational Development, 1991 WL 688702 (Jan. 1, 2016).  The GED scale contains three divisions: Reasoning Development, Mathematical Development, and Language Development.  *Id.*  According to the DOT, the jobs that the VE identified contain GED codes that seem to require the ability to carry out instructions and speak in English.  *See* DOT, Sorter – Light Work # 209.687-026, 1991 WL 671813 (Jan. 1, 2016); Inserter # 734.687-034, 1991 WL 679954 (Jan. 1, 2016); Sorter – Sedentary Work # 521.687-086, 1991 WL 674226 (Jan. 1, 2016).

The sorter job (light) has a level 3 Reasoning Development code and a level 2 Language Development code.  *See* DOT, 1991 WL 671813.  Those codes provide, in relevant part, that the employee must "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[s]peak clearly and distinctly with appropriate pauses

6

and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses." *Id.*

The inserter and sorter (sedentary) jobs have level 1 Reasoning and Language Development codes. *See* DOT, 1991 WL 679954; 1991 WL 674226. Those codes provide, in relevant part, that the employee must "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[s]peak simple sentences, using normal word order, and present and past tenses." *Id.*

Based on these definitions, it seems that Afari would be unable to perform these jobs because she cannot communicate in English and thus an apparent conflict existed between the VE's testimony and the DOT.

Social Security Ruling 00-4p, which clarifies the SSA's standards for using a VE, provides that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ]'s duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

S.S.R. 00-4p, 2000 WL 1898704, at \*2 (S.S.A. Dec. 4, 2000). Thus, this Ruling "place[s] an affirmative duty on the ALJ to identify and resolve any conflict between the [VE]'s testimony and the DOT before relying on such testimony." *Patti v. Colvin*, No. 13-CV-1123-JTC, 2015

WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015) (citation omitted); *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015) ("The ALJ independently must identify conflicts between the [VE]'s testimony and the [DOT].")

Here, the ALJ erred when he failed to identify the apparent conflict between the jobs the VE identified and the DOT definitions that require the employee to communicate in English. Tr. 24-25; *see, e.g.*, *Spears v. Colvin*, No. 15-CV-6236-FPG, 2016 WL 4973890, at *4 (W.D.N.Y. Sept. 19, 2016) (finding that the ALJ erred when he failed to resolve the conflict between the plaintiff's inability to reach overhead and the VE's testimony that she could perform jobs that required frequent reaching in all directions according to the DOT).

The ALJ failed to resolve the conflict at the hearing by merely asking whether the VE's testimony was consistent with the DOT without any further discussion. Tr. 51; *see Patti*, 2015 WL 114046, at *5-6 ("The ALJ's catch-all question to the [VE] regarding any inconsistencies between the [VE]'s testimony and the DOT does not satisfy the ALJ's duty to identify, explain, and resolve the conflicts between the [VE]'s testimony and her decision."). The ALJ also failed to resolve the conflict in his decision, which included a conclusory statement that the VE's testimony was "consistent with the information contained in the [DOT]." Tr. 25; *see Diaz v. Astrue*, No. 3:11-cv-317 (VLB), 2012 WL 3854958, at *6 (D. Conn. Sept. 5, 2012) ("This Court finds the ALJ's conclusive statement at the end of his Decision to be insufficient because the plaintiff never received an explanation for the resolution of the inconsistency between the DOT characteristics and the RFC finding when her benefits were denied."). Neither of these actions satisfied the ALJ's duty to identify, explain, and resolve the conflict between the VE's testimony and his decision.

The Commissioner argues that the ALJ did not err because he limited Afari to unskilled work, which generally does not require the ability to communicate in English.  ECF No. 14-1, at 25.  In support of this argument, the Commissioner cites 20 C.F.R. Part 404, Subpart P, App'x 2 § 202.000(g) ("the Grids"), which provides that:

> [w]hile illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance.

The Court is not persuaded by this argument for two reasons.  First, the ALJ did not rely, and was not entitled to rely, on the Grids to determine whether Afari was disabled because they did not adequately reflect Afari's condition.  *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).  The ALJ found that Afari could perform light work with many additional exertional and nonexertional limitations, and exclusive reliance on the Grids is inappropriate where the Grids fail to account for the full extent of the claimant's limitations.  *Id*; *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. Part 404, Subpart P, App'x 2 § 200.00(a) ("Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled.").

Second, although the ability to communicate in English may actually be insignificant in the positions the VE identified, it is the ALJ's duty to elicit an explanation from the VE on that issue.  If that explanation does not provide a reasonable basis for relying on the VE's testimony, then that testimony cannot constitute substantial evidence for denying disability benefits.  But if the VE's explanation is reasonable, the ALJ can resolve the apparent conflict with the DOT and properly rely on the VE's testimony.  *Pearson*, 810 F.3d at 211.

It is important to resolve this conflict because, even if only some sorters and inserters are required to communicate in English, it would affect the number of positions in the national economy that are available to Afari.[5] An ALJ can only find a claimant not disabled at step five if the Commissioner proves that the claimant can perform other work that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(1). Thus, the VE must indicate how many of these positions do not require the ability to communicate in English so that the ALJ can properly determine whether Afari is disabled. *See Mendez v. Barnhart*, No. 05 Civ. 10568(SHS), 2007 WL 186800, at * (S.D.N.Y. Jan. 23, 2007) (finding no error at step five where the VE explained that her definition of a job was modified from the DOT listing so that it included only the sub-set of jobs that the claimant could perform with his limitations and she adjusted the estimated number of available jobs accordingly).

Because the ALJ did not elicit the basis for the VE's testimony that Afari could perform the jobs despite her inability to communicate in English or a reasonable explanation for the VE's deviation from the DOT, the Court cannot determine whether substantial evidence supports the ALJ's step five findings and remand is required. *See Aubeuf v. Schweiker*, 649 F.2d 107, 112 (2d Cir. 1981) (noting that it is the Commissioner's burden at step five "to produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform") (citation omitted). Accordingly, remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent

---

[5]     Even though the ALJ's RFC assessment limited Afari to only occasional interpersonal contact, no teamwork, and no more than superficial public contact, it is still possible that this conflict would affect the number of jobs available to Afari.

with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  *See Curry v. Apfel,* 209 F.3d

117, 124 (2d Cir. 2000); 42 U.S.C. § 1383(c)(3).  The Clerk of Court is directed to enter

judgment and close this case.


IT IS SO ORDERED.

Dated: May 12, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court